# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

JENNIFER LAWSON,

        **Plaintiff,**

v.                                                 Case 2:15-cv-02336-cgc

CAROLYN W. COLVIN,
**Acting Commissioner of**
**Social Security,**

        **Defendant.**

## ORDER REVERSING THE DECISION OF COMMISSIONER AND REMANDING PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)

Plaintiff filed this action to obtain judicial review of her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401, *et seq*. By consent of the parties, this case has been referred to the United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

Plaintiff filed her application for benefits on February 22, 2012. Her claims were denied initially and upon reconsideration. A hearing was held on January 6, 2014 before Administrative Law Judge ("ALJ") Brian Curley. On February 6, 2014, the ALJ concluded that Plaintiff was not disabled under the Act. Plaintiff sought review by the Appeals Council, to which she presented additional evidence, but the Appeals Council denied her request. The ALJ's decision thus became the Commissioner's final decision. Plaintiff then filed this action requesting reversal of the

Commissioner's decision. For the reasons set forth herein, the decision of the Commissioner is REVERSED, and the action is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for a reevaluation of Dr. Capocelli's medical source opinion records contained in Exhibit 30F and a consideration of the new and material evidence contained in Exhibit 31F.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g); *Wyatt v. Secretary of Health & Human Services*, 974 F.2d 680, 683 (6th Cir.1992); *Cohen v. Secretary of Health & Human Services.*, 964 F.2d 524, 528 (6th Cir.1992), and whether the correct legal standards were applied, *Landsaw v. Secretary of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir.1986).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. *See Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was born on February 12, 1981 and was thirty-two-years old on the date of the administrative hearing. (R. at 23, 181). She has at least a high school education and is able to communicate in English. (R. at 29). She has past relevant work experience as a school bus driver.

(*Id.*).

The ALJ determined as follows as to Plaintiff's initial period of disability, which began on February 21, 2008 and lasted until August 15, 2012: (1) the claimant's date first insured is October 1, 2010; (2) she meets the insured status requirements of the Act through December 31, 2011; (3) the claimant has not engaged in substantial gainful activity since February 21, 2008 (4) she had the following severe impairments: discogenic and degenerative disc disease of the lumbar and thoracic spine, left ulnar sensory neuropathy, right trochanteric bursitis, Chiari malformation, and obesity; (5) she did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (6) she had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that she had the following limitations: standing and walking less than two hours in an eight hour workday; sitting for less than six hours in an eight hour workday; never climbing, balancing, kneeling, crouching, crawling, or stooping; occasional reaching in all directions, handling, fingering, or feeling; no more than moderate noise environments; and, avoidance of temperature extremes, noise, dust, vibration, humidity, wetness, hazards, and fumes; (7) she was unable to perform any past relevant work; (8) her acquired job skills do not transfer to other occupations within her RFC; (9) considering her age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that she could have performed; (10) she was under a disability from February 21, 2008 through August 15, 2012.

Further, the ALJ determined as follows as to Plaintiff's updated RFC and disability status beginning August 16, 2012: (1) she has not developed any new impairment or impairments since August 16, 2012 (2) her current impairments are the same as those present from February 21, 2008

through August 15, 2012; (3) beginning August 16, 2012, she has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) medical improvement occurred as of August 16, 2012; (5) the medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's RFC; (6) beginning August 16, 2012, the claimant has had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that she can lift and carry ten pounds occasionally and less than ten pounds frequently; sit and stand and/or walk each for six hours in an eight hour workday; occasionally climb ramps/stairs, balance, stoop, kneel, crouch or crawl, and never climb ladders, ropes or scaffolds; and, she should avoid even moderate exposure to vibration and hazards; (7) she is still unable to perform past relevant work; (8) her age category has not changed since August 16, 2012; (9) her education level has not changed; (10) beginning on August 16, 2012, transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the she is not disabled whether or not she has transferable job skills; (11) beginning August 16, 2012, considering her age, education, work experience, and RFC, there have been jobs that exist in significant numbers in the national economy that she can perform; and, (12) her disability ended August 16, 2012.

The Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. *Born v. Secretary of Health & Human Services*, 923 F.2d 1168, 1174 (6th Cir.1990). The initial burden of going forward is on the claimant to show that she is disabled from engaging in her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the

existence of available employment compatible with the claimant's disability and background.  *Id.*

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.[1]
>
> 4. An individual who can perform work that he has done in the past will not be found to be disabled.
>
> 5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301 (6th Cir. 1988).  Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.  20 C.F.R. § 404.1520 & 416.920.

Here, the sequential analysis proceeded to the fifth step.  At step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's RFC . . . and vocational profile."  *Jones v. Commissioner of Social*

---

[1]  Before then proceeding to step four of the sequential evaluation process, the ALJ must determine the claimant's RFC pursuant to 20 C.F.R. 404.1520(e) and 416.920(e).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe pursuant to 20 C.F.R 404.1520(e), 404.1545, 416.920(e) & 416.945.

*Security*, 336 F.3d 469, 474 (6th Cir. 2003). Ultimately, the ALJ found that Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy, and, therefore, was not disabled within the meaning of the Act.

On appeal to this Court, Plaintiff asserts that the ALJ's factual finding that Plaintiff had, by August 16, 2012, enjoyed medical improvement in the impairments impacting her ability to work and was able, at that time, to engage in substantial gainful activity is not supported by substantial evidence. Specifically, Plaintiff alleges as follows: (1) that her lengthy medical history supports a finding of continued disability; (2) that her pain relief, including by thoracic epidural injections, was only temporary; (3) that the ALJ failed to incorporate her reaching limitations in his updated RFC; and, (4) the ALJ failed to evaluate medical opinion source evidence from Dr. Anthony Capocelli as to Plaintiff's headaches, which required surgical treatment and continued after the ALJ concluded her disability ended.

## I. MEDICAL IMPROVEMENT

First, Plaintiff asserts that the ALJ's determination that Plaintiff had enjoyed medical improvement as of August 16, 2012 and was able to return to substantial gainful activity on that date is not supported by substantial evidence. Plaintiff asserts that this conclusion is without foundation and is belied by her "massive medical record." The Commissioner asserts that substantial evidence did support the ALJ's determination.

The ALJ considers whether a claimant's disability status continues or whether it should cease pursuant to 20 C.F.R. § 404.1594. In doing so, the ALJ should determine whether there has been any medical improvement in the claimant's impairments and, if so, whether this improvement is related to her ability to work. 20 C.F.R. § 404.1594(a); *see also* 20 C.F.R. § 404.1594(f) (setting

6

forth nine-step process to evaluate claims of continuing disability). Medical improvement is defined as any decrease in the medical severity of her impairments which were present at the time of the most recent favorable medical decision finding that the claimant was disabled. 20 C.F.R. § 404.1594(b)(1). "A determination that there has been a decrease in medical severity must be based on changes (improvements) in the symptoms [or] signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Id*. If the ALJ is able to show that the claimant becomes able to engage in substantial gainful activity, he must find that she is no longer disabled. *Id*. 20 C.F.R. § 404.1594(a).

With respect to the period from February 21, 2008 until August 15, 2012, the ALJ found that her initial diagnosis was of degenerative disc disease at L4-L5 with foraminal stenosis, which was confirmed by MRI in December 2007. (R. at 28). After failing to improve with conservative treatment, Plaintiff underwent a lumbar laminectomy and fusion in February 2008. (*Id*.; Exh. 1F). Plaintiff was subsequently diagnosed with Chiara malformation and underwent a suboccipital decompression and duraplasty in March 2009. (R. at 28). She later experienced a significant prolapse of the cerebellum with significant migraine headaches requiring additional surgery in February 2011. (*Id*.; Exhs. 3F & 4F). During this time, Plaintiff testified to having daily headaches, which she rated as a ten, and also experienced associated vomiting and nausea. (R. at 28). She also suffered from constant back pain and decreased sensation in her hands. (*Id*.) An EMG performed in September 2011 was negative except for "mild left-sided ulnar neuropathy." (*Id*.) Plaintiff was diagnosed with right trochanteric bursitis and received injections as treatment. (*Id*.) Plaintiff also had an MRI of the thoracic spine in January 2012, which showed a disc herniation at T11-T12 resulting in distortion of the thecal sac and a disc herniation at T5-T6 with "some contact with the

cord." (R. at 28). Plaintiff's records in 2011 and 2012 also demonstrate that she was obese, that it was suggested that she participate in a weight-loss program, and that she did not comply. (*Id.*)

With respect to her medical source opinion testimony for the February 21, 2008 to August 15, 2012 period, Plaintiff first reported to Dr. Niranjan Siva, M.D., a neurologist, in October 2009 stating that she had experienced headaches since age sixteen. (R. at 28). His records reflect that her headaches had been relieved and completely resolved at times with prescription pain medication. (*Id.*) Dr. Siva performed a neurological evaluation in July 2012 that was unremarkable except for some decreased sensation over her hands and tenderness in the occipital region along her incision site. (*Id.*) Plaintiff was referred to Dr. Yogesh Malla, M.D., a pain management specialist, in May 2012. (R. at 28). Plaintiff reported a 112-pound weight gain in the past six years. (*Id.*) At a follow-up examination in June 2012, Plaintiff reported that she had "run out of all prescribed medication," and it was confirmed that she had "no medication in her system." (*Id.*)

In determining Plaintiff's RFC for the February 21, 2008 to August 15, 2012 period, the ALJ further considered the opinion of Dr. Carlos Hernandez, M.D., a state-agency consultative examiner who reviewed Plaintiff's medical records in September 2012. (R. at 29). "Dr. Hernandez opined that the claimant could lift and carry ten pounds occasionally and less than ten pounds frequently; sit, and stand and/or walk for six hours in an eight-hour workday, occasionally climb ramps/stairs, balance, stoop, kneel, crouch or crawl, and never climb ladders, ropes or scaffolds. She should avoid even moderate exposure to vibration and hazards." (*Id.* & Exh. 4A). The ALJ, however, determined that he could not give great weight to Dr. Hernandez's opinion for this period for the following reasons: "The medical evidence shows that the claimant required several different surgeries, followed by periods of recovery through August 15, 2012. The evidence shows that the claimant

continued to complain of pain and received injections along with prescription pain medication regularly throughout this period. Although no treating or examining physician set out any work related limitations, [the ALJ was] persuaded that during this period the claimant would have been unable to perform even sedentary exertion for a continuous period of either hours a day or 40 hours a week." (R. at 29).

With respect to the period beginning on August 16, 2012, the ALJ found that Plaintiff had a medical improvement in her symptoms that correlated with an increased RFC. (R. at 32). Specifically, the ALJ found that Plaintiff had passed a required physical and obtained a CDL license needed to be able to perform her past work as a school bus driver. (*Id.*) Plaintiff also testified that she is "quite capable of driving for short distances and grocery shops as needed" and also performs some household chores. (*Id.*) Plaintiff stated that she was capable of traveling and had ridden in a car to Florida since her disability began. (*Id.*)

With respect to her headaches, Plaintiff stated that she had suffered with them for most of her life, that they worsened after her 2009 cervical surgery, but that they improved after the additional surgery in 2011. (*Id.*) She additionally stated that the range of motion in her neck and her long-term memory loss improved. (*Id.*) She stated that, in 2010 and 2011, her headaches occurred three or four times a week, that she was unable to get out of bed when they did occur, that they caused her to have "difficulty concentrating," and that any event, activity, stress, or noise worsened the pain. (*Id.*) However, since her most recent surgery in November 2013, she reports that she is no longer experiencing headaches on a daily basis. (*Id.*)

Plaintiff states that she continues to have decreased sensation in both hands resulting in difficulty gripping or repetitive use of her hands. (*Id.*) She also reported that she has hearing

problems and had been prescribed hearing aids, which she lost. (*Id*.) The ALJ concluded though that Plaintiff did not appear to have any hearing difficulty at the hearing and did not need questions repeated even without use of hearing aids. (*Id*.)

The ALJ concluded the following with respect to Plaintiff's medical limitations after August 15, 2012: "[T]he claimant has not required ongoing treatment for headaches. Additionally orthopedic and neurological examinations on or after August 15, 2012 revealed only mild or no evidence of restrictions. That evidence, in combination with the claimant's statements of significant pain relief obtained through treatment at pain management, confirmed the claimant's improvement in her medical condition." (*Id*.) The ALJ further noted that there have been "significant gaps in her treatment and times when she did not voice complaints of neck, mid-back or low-back pain." (*Id*.) Plaintiff has also failed to follow recommendations for weight loss and was apparently noncompliant with prescribed medication at times. (*Id*.) Thus, the ALJ concluded that medical evidence on or after August 15, 2012 does not reasonably support the claimant's allegations of pain and limitation. (*Id*.) He also noted that no treating or examining physician has set out any work related limitations for Plaintiff. (*Id*.)

The ALJ considered the impact of Plaintiff's obesity pursuant to Social Security Ruling 02-1p and its impact on her other impairments, reasoning that it is "reasonable to find that her obesity probably exacerbates her back pain at times" but that "there is no basis for a finding that her obesity causes any additional limitations above and beyond the limitations established by back pain." (*Id*. at 33). The ALJ further noted that Plaintiff had gained more than 100 pounds since her alleged onset date but that her impairments do not seem to be impacted by her obesity and that she has failed to lose weight as recommended. (*Id*.)

Finally, the ALJ again considered Dr. Hernandez's restrictions as set forth above and determined that they should be given "great weight" for the period of August 16, 2012 through the date of the his decision. (*Id*.) The ALJ reasoned that, based upon her statements to her physicians and the objective findings in the record, Plaintiff's medical condition has shown improvement following her surgeries and her limitations have decreased. (*Id*.) The ALJ concluded that Plaintiff "continues to have limitations, which prevent her from lifting and carrying more than ten pounds due to neck pain, shoulder pain and some neuropathy in the arms"; however, "her condition has improved to the point that she is able to sustain sedentary work activity through an eight-hour day, or 40 hour week." (*Id*.)

### A. Prior Medical Treatment

Plaintiff's first argument that no medical improvement had occurred by August 16, 2012 is to rely upon the extensive medical treatment that she had already received for her impairments. However, Plaintiff does not assert that the ALJ did not consider that history appropriately, and the Court's review concludes that, not only did the ALJ consider them, that they were indeed the basis of his previous conclusion that Plaintiff was disabled under the Act from February 21, 2008 until August 15, 2012. Thus, the Court finds that the ALJ did not err in readjusting her RFC simply based upon her past medical history.

### B. Pain Relief from Epidural Injections

Next, Plaintiff argues that the ALJ's conclusion that she received relief from thoracic spinal pain with injections is flawed because her relief was only "partial," "temporary," and "fleeting" and that she endured multiple injections over a two-year period from May 5, 2011 until June 3, 2013 out of "desperation for any relief, no matter how minor, from unremitting pain." (R. at 735-54, 826-31,

832-35).  Upon review, Plaintiff saw Dr. Yogesh Malla of the Pain Management Center of Paducah on May 11, 2012 for a comprehensive initial evaluation of her complaints of "severe headaches, neck and back pain."  (R. at 735-54).  Dr. Malla performed a thoracic and caudal epidural injection on June 19, 2012.  (R. at 753).

On July 3, 2012, Plaintiff saw Dr. K. Brandon Strenge, M.D. with complaints of "increasing difficulty with numbness, tingling, weakness and neck pain with associated headache."  (R. at 767).  Dr. Strenge noted her "longstanding complaints of axial and musculoskeletal spine pain" and "complex pain and cervical history."  (*Id*.)  Plaintiff advised Dr. Strenge that she was also being treated by Dr. Malla for her cervical and throracolumbar pain and was having "successful pain management" as to her lower back.  (*Id*.)  Dr. Strenge advised that Plaintiff continue on pain management with Dr. Malla with a follow-up with him in three months for reevaluation of any neurological changes.  (*Id*.)

On August 15, 2012, Plaintiff returned to Dr. Malla, and she advised that her most recent epidural injection for her thoracic spine reduced pain by 70% for two weeks and 50% for the following two weeks.  (R. at 779).  She further advised that the epidural injection reduced her low-back pain by 50% for three weeks.  (*Id*.)  Plaintiff sought to have the treatment done again, and it was performed that day.  (*Id*.)  Dr. Malla's notes, however, demonstrate that Plaintiff's drug testing was negative for the medications prescribed to her.  (*Id*.)

Plaintiff returned to Dr. Malla on September 24, 2012 complaining of mid- and low-back pain, stating that her prior injection improved her symptoms more than 50% for four weeks but that she wanted to have another injection.  (R. at 830).  Plaintiff's next thoracic epidural injection was performed that day.  (R. at 830).   Plaintiff returned to Dr. Malla on December 10, 2012 with

complaints of mid-and low-back pain and stated that her pain was improved more than 50% for two-and-a-half months from the previous injection and that she sought to have another injection. (R. at 828). Thus, she was given another treatment of thoracic and caudal epidural injections on that date. (*Id.*) She returned on March 11, 2013 and advised that she had a fifty-percent of a reduction of pain in her thoracic spine, which lasted for three months after the previous injection. (R. at 827). Thus, she underwent a yet another treatment of thoracic and caudal epidural injections on that date. (*Id.*)

While it is certainly true that the record reflects that Plaintiff has had to undergo multiple injections to obtain temporary relief, the record also reflects that she does have a significant (fifty-percent or more) improvement with each thoracic injection. Thus, the Court does not find that the ALJ erred in stating that she has experienced significant pain relief through treatment of pain management. Further, Dr. Siva's recommendations state that "pain management is a very difficult problem" that requires that the patient undergo various treatments to "achieve maximum functional capacity." (R. at 751). Although Plaintiff continues to suffer from multiple severe impairments, the ALJ has adjusted her RFC accordingly. The Court finds that, in viewing her pain management results along with her other medical improvements subsequent to August 16, 2012, the ALJ had substantial evidence to support his conclusion that her RFC had improved due to her partial progress with pain management. Such a determination based upon substantial evidence cannot be altered by the Court. *See Peterson v. Comm'r of Soc. Sec.*, 522 F. App'x 533, 538 (6th Cir. 2014) (finding that the substantial-evidence standard "presupposes that there is a zone of choice within which the decisionmaker can go either way, without interference by the courts"); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) (finding that, if substantial evidence supports the ALJ's decision, the court should defer to that finding "even if there is substantial evidence in the record that would have

supported an opposite conclusion").

### C. Reaching Abilities

Next, Plaintiff argues that the ALJ did not sufficiently address her reaching abilities and use of her arms in his updated RFC. Plaintiff states that, up until August 15, 2012, her RFC limited her to "occasional reaching in all directions." (R. at 27). However, after August 16, 2012, the ALJ included no reaching limitation in her RFC and did not explain why he concluded that Plaintiff had improved in her abilities to reach. (R. at 32). Plaintiff asserts that this finding is dispositive because the vocational expert testified that sedentary work requires "more than occasional" bilateral use of the upper extremities. (R. at 66).

The Commissioner responds that the ALJ removed the reaching limitations from Plaintiff's RFC because Dr. Hernandez did not impose any such limitations. (R. at 33, 93). The Commissioner further asserts that additional evidence in the record tends to support Dr. Hernandez's opinion, as Dr. Malla noted that Plaintiff had normal strength in her arms and hands and a normal range of motion in both shoulders. (R. at 747). The Commissioner also notes that Plaintiff has failed to cite any medical opinion evidence that contradicts Dr. Hernandez's opinion. Upon review, the ALJ's removal of a reaching limitation in the updated August 16, 2012 was based upon substantial evidence—namely, Dr. Hernandez's proposed limitations. Dr. Hernandez did not include any such limitation, which the ALJ accredited. Such a finding is supported by substantial evidence should not be disturbed by the Court.

### D. Dr. Capocelli's Treatment Records (Exhibit 30F) & Letter (Exhibit 31F)

Finally, Plaintiff argues that there the ALJ's finding of medical improvement in her RFC as

of August 16, 2012 did not account for her continuing and severe headaches.[2]  Specifically, on

September 27, 2013, Dr. Anthony Capocelli, M.D. diagnosed Plaintiff with idiopathic intracranial

hypertension, which required the surgical placement of a lumboperitoneal shunt on November 18,

2013.  (R. at 866-74).  Plaintiff further states that Dr. Capocelli opined in a March 20, 2014 letter

("Dr. Capocelli's Letter") that she continues to have "thoroughly significant debilitating headaches"

that so limit her daily living as to render her totally and permanently disabled.  (R. at 875).

   The Commissioner responds that "it appears the surgery [inserting the lumboperitoneal

shunt] was necessary because Plaintiff had lost access to her pain control doctor" as well as her

access to prescription Stadol nasal spray that had proved effective for her headaches in the past.  (R.

at 784, 872).  The Commissioner states that, following the surgery, Plaintiff had reported that she

was no longer experiencing daily headaches but was continuing to experience several per week.  (R.

at 32, 45-46, 49, 56).  Thus, the Commissioner argues that Plaintiff's headaches were controlled by

medication and surgery and are not inconsistent with the ALJ's medical improvement finding.

   The Commissioner further responds that, as to Dr. Capocelli's Letter, it was written after the

ALJ's February 6, 2014 unfavorable decision.  (R. at 34).  Dr. Capocelli's Letter was thus not

contained in the record before the ALJ but was submitted to the Appeals Council, which declined

to grant Plaintiff's request for further review.  (R. at 9-10).

   Upon review, Dr. Capocelli's records pertaining to his treatment of Plaintiff from September

27, 2013 until November 19, 2013 were included in the record before the ALJ.  (*See* Exh. 30F at

863-74).  The Commissioner concedes that Dr. Capocelli was a treating physician whose medical

---

[2]   Plaintiff also asserts that she continued to have lower back and leg pain but does not
cite any specific evidence as to either that she believes the ALJ did not consider in his updated
RFC determination.  Accordingly, the Court will not further address those issues.

source opinions must be considered by the ALJ pursuant to 20 C.F.R. § 404.1527(c), which contains six factors.

First, the ALJ must examine the relationship between the patient and medical professional, as more weight is accorded to an examining source. 20 C.F.R. § 404.1527(c)(1). Second, the ALJ must consider whether the medical professional actually treated the patient, as "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [his] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). If a treating source's opinion on the nature and severity of the impairment(s) is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). If a treating source's opinion is not given controlling weight, the ALJ must consider the length of the treatment relationship and the frequency of examination along with the nature and extent of the treatment relationship to determine if his or her opinion should be given more weight than a nontreating source. 20 C.F.R. §§ 404.1527(c)(2), (c)(2)(I)-(ii). The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2).

Third, the ALJ must consider the amount of relevant evidence the medical source provides to support the opinion, particularly medical signs and laboratory findings, to determine the amount of weight to be given to the opinion. 20 C.F.R. § 404.1527(c)(3). As to nontreating sources, the weight accorded to their opinions will "depend on the degree to which they provide supporting

explanations for their opinions." *Id*. The ALJ must also "evaluate the degree to which these opinions consider all of the pertinent evidence in [the] claim, including opinions of treating and other examining sources." *Id*.

Fourth, the ALJ must consider the consistency of the opinion, as the more consistent an opinion is with the record as a whole, the more weight it will be given. 20 C.F.R. § 404.1527(c)(4). Fifth, the ALJ generally gives more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to an opinion of a source who is not a specialist. 20 C.F.R. § 404.1527(c)(5). Sixth, the ALJ will consider any factors the claimant or others bring to his or her attention, or of which he or she is aware, which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(6).

The ALJ did not address Dr. Capocelli's medical source opinions that were contained in the record in Exhibit 30F in accordance with 20 C.F.R. § 404.1527(c). Although the Commissioner asserts that the record reflects that Plaintiff's surgery was only necessary because she lost access to her pain control doctor and that her headaches were adequately managed with Stadol, Dr. Capocelli's records contain significant evidence, including her need for surgical intervention, demonstrating that she suffered from more debilitating symptoms that were not managed by conservative treatment. These medical source opinions were not considered in considering whether Plaintiff had seen medical improvement sufficient to update RFC as required.

Thus, the decision of the Commissioner is hereby REVERSED, and REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for the ALJ to consider Dr. Capocelli's medical source opinions contained in Exhibit 30F in crafting Plaintiff's RFC. The ALJ should further review any portions of the record which may be weighed differently in view of the reevaluation of Dr.

Capocelli's opinions contained in Exhibit 30F. If the ALJ determines that Plaintiff's RFC should be adjusted upon reevaluation, the ALJ should additionally reconsider Step Five of the sequential analysis.

Finally, although Dr. Capocelli's Letter was not contained in the record before the ALJ, this Court had the opportunity to review it as part of the administrative record. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Section 405(g) provides in Sentence Six that the Court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Materiality requires that there be a "reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new [evidence]." *Salyer v. Comm'r of Soc. Sec.*, 574 F. App'x 595, 597 (citing *Hallon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 484 (6th Cir. 2006)).

Dr. Capocelli's Letter constitutes new evidence because it was not before the ALJ when his decision was made. Dr. Capocelli's Letter is also material because it is an opinion of Plaintiff's treating physician and stands in contrast to the less limiting opinions of Dr. Hernandez, a consultative examiner. Additionally, it is material because it is in stark contrast to other findings of the ALJ, including that he does not mention any continuing headaches after the November 2013 surgery. (R. at 32). Although the Commissioner argues that Dr. Capocelli's conclusory opinion that Plaintiff is "disabled" is not entitled to special weight because such a decision is within the prerogative of the Commissioner, *see Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 472 (6th Cir. 2014), the Court finds that his opinion is nonetheless material in that it further explains that he has

been treating her for "chronic headaches for known pseudotumor cerebri," that she has required a lumboperitoneal shunt, that she has been treated with "maximum medical intervention" for her condition, and that she "continues to have thoroughly significant debilitating headaches which limit her activities of daily living quite significantly." (R. at 875). The Court further finds that good cause exists for Plaintiff not filing Dr. Capocelli's letter with the ALJ, as Dr. Capocelli's Letter was not written until after the ALJ issued his opinion. *See, e.g. Street v. Comm'r of Soc. Sec.*, 390 F. Supp. 2d 630, 641 (E.D. Mich. Sept. 7, 2005) (finding that good cause exists for failure to submit evidence that was not created until after the ALJ's decision date).

Accordingly, the Court finds that this case meets the criteria under Sentence Six of 42 U.S.C. §405(g) for remand for the taking of additional evidence in addition to the criteria under Sentence Four of 42 U.S.C. §405(g) for remand for agency reconsideration.

In cases such as this where it has been established that remand is appropriate both under Sentence Four for agency reconsideration and under Sentence Six for new and material evidence, courts face a jurisdictional conundrum, as the precise method or methods of remand is important due to its jurisdictional implications. *See Faucher v. Sec'y of Health & Human Srvs.*, 17 F.3d 171, 175 (6th Cir. 1994). A remand under Sentence Four of 42 U.S.C. §405(g) is a post-judgment remand where the Court relinquishes jurisdiction; a remand under Sentence Six of 42 U.S.C. §405(g) is a pre-judgment remand where the Court retains jurisdiction. *Id*.

Courts that have considered this question have utilized two approaches. First, some courts have ordered a "dual basis remand" while retaining jurisdiction over the case under Sentence Six. *Jackson v. Chater*, 99 F.3d 1086, 1097 (11th Cir. 1996) (concluding that 42 U.S.C. § 405(g) permits dual basis remand and requires the district court to retain jurisdiction due to the Sentence Six ground

for remand); *see also Yolanda Jones v. Comm'r of Soc. Sec.*, No. 1:14-cv-240, 2015 WL 4652638, at *9 (S.D. Ohio Aug. 5, 2015) (permitting dual-basis remand with the district court retaining jurisdiction as a result of the Sentence Six prong); *Richard Dale Crawford v. Comm'r of Soc. Sec.*, No. 1:13-cv-451, 2014 WL 6606135, at *12 (S.D. Ohio Nov. 20, 2014) (same); *Heather Sizemore v. Comm'r of Soc. Sec.*, No. 1:13-cv-521, 2014 WL 4549020, at *24 (Sept. 12, 2014) (same); *Tia Reeves v. Comm'r of Soc. Sec.*, No. 1:13-cv-325, 2014 WL 2434112, at *9 (May 29, 2014) (same); *Stephanie Banik v. Comm'r of Soc. Sec.*, No. 1:11-cv-342, 2012 WL 2190816, at *17 (June 14, 2012) (same); *Tyrone Sturgeon v. Comm'r of Soc. Sec.*, No. 1:08-cv-510, 2009 WL 2005276, at *17 (July 9, 2009); *Jeannie B. Harthun v. Comm'r of Soc. Sec.*, No. 1:07-cv-595, 2008 WL 2831808, at *8 n.6 (July 21, 2008) (acknowledging the possibility for dual-basis remands under *Jackson* but finding that the plaintiff failed to demonstrate a Sentence Six basis for remand).

Second, other courts have found it to be more appropriate to order a Sentence Four remand only and to relinquish jurisdiction but order that the ALJ consider additional evidence upon remand. *Melvin Lynn Huber v. Comm'r of Soc. Sec.*, No. 07-14588, 2009 WL 111738, at *9-*12 (E.D. Mich. Jan 15, 2009) (citing *Faucher v. Sec'y of Health & Human Srvs.*, 17 F.3d 171, 175 (6th Cir. 1994); *see also Timothy W. Demars v. Comm'r of Soc. Sec.*, No. 11-15394, 2013 WL 1326423, at *12 (E.D.Mich. Feb. 4, 2013). In *Huber*, the Court found that this approach was particularly preferable if the "new sentence six material . . . is almost inseparably connected to the basis of the sentence four remand." *Id.* at *11. Further, the *Huber* court concluded that a dual basis remand could be "jurisdictionally confusing," requiring a determination of "whether relief at the administrative level was based on sentence four grounds, sentence six grounds, or some combination of the two," and that the Sentence Four remand with an order to consider additional evidence "get[s] everything right

in one proceeding" and eliminates the jurisdictional confusion. *Id*. (citing *Faucher*, 17 F.3d at 175).

Finally, the *Huber* court opined that the United States Court of Appeals in *Faucher* had "provided a clean, simple remedy that gives Plaintiff a full and fair opportunity to have a single hearing at which all material is considered," and that the *Faucher* method should be followed instead of "an Eleventh Circuit case—however well-reasoned it might be." *Id*. at *12.[3]

Upon review, the Court is compelled by the *Huber* court's reasoning that, when a Plaintiff satisfies the grounds for both a Sentence Four and a Sentence Six remand under 42 U.S.C. §405(g), and when, as is the case here, the new and material evidence (Dr. Capocelli's Letter) is inseparably connected to the basis of the Sentence Four remand for reconsideration (Dr. Capocelli's treatment records), the clean, simple remedy is to remand pursuant to Sentence Four of 42 U.S.C. §405(g) and order the ALJ to consider the new and material evidence contained in Dr. Capocelli's Letter on remand. As with the reconsideration of Dr. Capocelli's treatment records contained in Exhibit 30F, the ALJ should review his determination of Plaintiff's updated RFC in light of Dr. Capocelli's Letter. The ALJ should further review any portions of the record which may be weighed differently in view of the reevaluation of Dr. Capocelli's Letter. If the ALJ determines that Plaintiff's RFC

---

[3] Although the *Huber* court appropriately seeks all possible guidance from the opinions of this Circuit, it is important to note that in *Faucher*, the United States Court of Appeals for the Sixth Circuit did not squarely address a dual-basis remand because the plaintiff had not satisfied the requirements for both a Sentence Four and Sentence Six remand. 17 F.3d at 175; *see also Huber*, 2009 WL 111738 at *11. Instead, the *Faucher* court only accepted that remands under Sentence Four could also order new and additional evidence be considered upon remand. *Id*. (holding that "remands under both sentence four and sentence six of § 405(g) can involve the taking of additional evidence."). Thus, while *Faucher* contains clear and important guidance in this Circuit, and while the *Huber* court found it to be most persuasive, it does not appear to be entirely dispositive of the issue, thus requiring this Court to examine the approaches of other courts when presented with cases where the plaintiff does satisfy the requirements of both a Sentence Four and Sentence Six remand.

should be adjusted upon reevaluation, the ALJ should additionally reconsider Step Five of the sequential analysis.

## II. Conclusion

For the reasons set forth herein, the Decision of the Commissioner is REVERSED, and the case is REMANDED pursuant to Sentence Four of 42 U.S.C. §405(g) for reconsideration of Dr. Capocelli's medical records contained in Exhibit 30F under 20 C.F.R. § 404.1527(c) and for consideration of the new and material evidence in Dr. Capocelli's Letter contained in Exhibit 31F.

**IT IS SO ORDERED** this 1st day of September, 2016.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE